BOTHE v. NOACK.

Opinion delivered June 20, 1921.

1. SPECIFIC PERFORMANCE—RIGHT OF BENEFICIARY OF CONTRACT.—One for whose benefit a contract for the sale of land was made is entitled to enforce it according to its terms, though he never signed the contract.

2. SPECIFIC PERFORMANCE—RIGHT OF THIRD PARTY TO.—Where a contract for the sale of land between plaintiff and one defendant provided that another defendant should sign the purchase notes, the latter, by signing the notes, accepted the terms of the contract, namely, that if he paid the notes he should be substituted to the other defendant's rights and have specific performance.

3. VENDOR AND PURCHASER—FORFEITURE FOR NONPAYMENT OF FIRST NOTE.—Where a contract for the sale of land provided that a third person should sign the purchaser's notes, and that, in the event the purchaser should be unable to complete the payment of the purchase price, the third person should pay the notes and be substituted to all the rights of the purchaser, a failure of the purchaser to pay the first note when due was not such a breach of the contract as would prevent him from having specific performance; the contract not providing for such substitution upon default as to the first note only, and there being no provision that upon default on one note all should become due.

4. VENDOR AND PURCHASER — RIGHT TO SPECIFIC PERFORMANCE.— Where a contract for the sale of land provided that, if the purchaser should be unable to complete the payment of the purchase notes which were payable on or before a certain date, a third person who signed the purchaser's notes should pay the notes and be substituted to the purchaser's rights, the purchaser had the right to have specific performance if he paid the notes on or before the maturity of the last note.

5. TENDER—SUFFICIENCY.—Where a contract for the sale of land provided that if the purchaser should be unable to complete the payment of the purchase notes, which were payable on or before a certain date, a third person who signed the purchaser's notes

should pay them and be subrogated to all the purchaser's rights, and the third person paid all of the notes before the last one became due, a tender by the purchaser of the full amount paid by the third person before maturity of the last note was sufficient, without the amount being paid into court.

6. COUNTERCLAIM AND SET-OFF—WHEN COUNTERCLAIM ALLOWED.—In an action by a purchaser for specific performance of a land contract defendant can not set up a counterclaim for the recovery of money growing out of an independent transaction; as a counterclaim is allowed only in actions for recovery of money and must tend in some way to diminish or defeat plaintiff's recovery.

Appeal from Arkansas Chancery Court, Northern District; *John M. Elliott,* Chancellor; affirmed.

STATEMENT OF FACTS.

B. F. Noack brought this suit in equity against H. Bothe and Chas. Scheuer and Martha Scheuer, his wife, to cancel a deed executed by the Scheuers to Bothe to 170 acres of land in Arkansas County, Arkansas, and to have specific performance of a contract in writing by Chas. Scheuer to him to the same land.

Bothe defended the suit on the ground that Noack had breached his contract with Scheuer and was not entitled to the specific performance of it, and that under its terms he was entitled to a deed to the land from Scheuer.

The contract which is the basis of this lawsuit was in writing and was signed by Chas. Scheuer and Martha Scheuer and B. F. Noack on the 26th day of July, 1919. The body of it is as follows:

"Parties of the first part have this day sold to second party under conditions hereinafter named the following lands situated in the Southern District of Arkansas County, Arkansas, towit: (Here follows description of the lands.)

"The purchase price is to be paid as follows: $100 cash in hand, the balance as follows: Second party hereby assumes the payment of one certain mortgage given to the American Investment Company, of Oklahoma City, Oklahoma, for the sum of $3,500; first parties are to pay the interest upon $3,500 to the first day

of August, 1919, and second party is to pay all interest accruing after the first day of August, 1919. Second party shall pay the remainder of the purchase price as follows: $2,000 January 5, 1920, and $2,900 January 5, 1921. However, it is agreed between the parties hereto that, in the event the year 1920 be a poor crop year, or if second party does not make an ordinary crop, and is unable to pay the sum of $2,900 January 5, 1921, then he is hereby given the option to pay the sum of only $1,450 upon said 5th day of January, 1921, and in the event he only pays $1,450 on January 5, 1921, then he shall pay the other remaining $1,450 on the 5th day of January, 1922. That part of the unpaid purchase price which is to be paid directly to the first party shall bear interest from this date until paid at the rate of eight per cent.

"First parties hereby warrant that they have a fee simple and merchantable title to the aforesaid land, and when that part of the purchase price due to them is paid in full they will make to second party a good warranty deed to said land, and will release and relinquish unto him all rights of dower and homestead in and to said lands, and to that end the said Martha Scheuer, wife of Chas. Scheuer, does release said dower rights and homestead.

"Second party shall execute to the first parties his promissory note for that part of the purchase price which is to be paid directly to first parties, and the said notes are to be signed by H. Bothe. In the event second party should be unable to complete the payment of the purchase price, then Mr. Bothe is hereby given the right to pay the aforesaid notes, and, in the event he does so pay said notes, he shall be substituted to all rights of second party under this contract, and he shall be entitled to have from first parties the said warranty deed.

"First parties agree to deliver to second party full and complete possession on or before the 5th day of January, 1920.

"Second party agrees to install a rice well, pump and fixtures, and have the same ready for operation for the pumping season of 1920.

"Two notes of $1,450 each shall be executed to secure the payment of $2,900 aforesaid, these notes shall be due and payable January 5, 1921, unless second party is unable because of poor crop to pay both of said notes at that time. In the event that he is unable to pay both of said notes January 5, 1921, then he shall only pay one of said notes on said date, and the other note shall be paid January 5, 1922."

According to the testimony of B. F. Noack, he paid Scheuer $15 to bind the contract for the purchase of the land before the written contract was executed. Bothe paid the balance of the $100 recited in the contract as having been paid upon the date of its execution. The first note described in the contract for the purchase of the land was for $2,000 due January 5, 1920. Noack did not receive notice from the bank which held the note for collection that it was due. The first Noack thought of it being due was on the 14th day of Janaury, 1920, when Bothe asked him where he was going to move. Noack responded that he was going to move on the place that he had bought from Scheuer. Bothe then said that he had paid the purchase price of the land, and that the land was his. Noack tried to get him to go to DeWitt with him so that he could get the money and pay off the notes given to Scheuer for the purchase price of the land. Bothe refused to go with him, saying that Noack would not be able to get the money. Noack told him that he could borrow the money. Afterward Noack borrowed $5,400, the balance of the purchase price due on the land and tendered it to Bothe. Bothe refused the tender. Gartus Mumsen lent the money to Noack with which to pay for the land. His testimony corroborated that of Noack to the effect that the money was tendered to Bothe, and he refused the tender.

H. Bothe was a witness for himself. According to his testimony, the bank demanded payment of him of the

$2,000 note due January 5, 1920, and, Noack having failed
to pay the note, Bothe paid it. He knew that Noack had
no money or property, and that nothing could be made
out of him by suit. On January 14, 1920, Bothe paid off
the remaining notes and demanded a deed to the prop-
erty from Scheuer. The two remaining notes were made
payable on or before a certain date. Bothe knew that
Noack was not able to pay these notes and he elected to
pay them off before they became due to stop interest.
Noack had not taken possession of the land at this time.
Noack at that time was a tenant on Bothe's land and
owed him a supply account of $639.44, which has not been
paid. The land in question has greatly increased in value
since the execution of the contract copied above.

Chas. Scheuer and Martha Scheuer, his wife, exe-
cuted a deed to the land to Bothe when he paid off the
purchase money notes. Subsequently B. F. Noack en-
tered into possession of the land and has held possession
of it since.

The chancellor found the issues in favor of B. F.
Noack, and it was decreed that the deed from Chas.
Scheuer and Martha Scheuer, his wife, to H. Bothe
should be canceled and the title to the land in contro-
versy was divested out of H. Bothe and vested in B. F.
Noack. Bothe was given a lien upon the land for the
sum of $5,355.21, the amount of the purchase price of the
land paid by him. Noack was given ninety days within
which to pay Bothe said sum of money, and in the event
of nonpayment, the land was ordered sold for the pay-
ment of the same. To reverse that decree H. Bothe has
duly prosecuted this appeal.

*Botts & O'Daniel,* for appellant, Rothe. ·

1. Every part of a written contract must be taken
into consideration in construing it; no part of it or pro-
vision of the contract must be disregarded. The whole
contract should be considered as an entirety. 104 Ark.
475; *Ib.* 573. The written contract provides that all the
notes were to be signed by H. Bothe, and further pro-
vides, "in event the party of the second part should be

unable to complete the payment of the purchase price, then H. Bothe is given the right to pay the notes and be substituted to all the rights of the second party under the contract and shall be entitled to have from the first parties a warranty deed." This provision must be given effect to under the contract, and Bothe had the right to be substituted as purchaser and obtain the deed under the contract. 84 Ark. 160.

A tender of money is insufficient unless the tender is kept good by putting the money in the registry of the court. See 90 Ark. 266; 30 *Id.* 505; 33 *Id.* 300; 34 *Id.* 582. In this case the complaint does not even allege that the tender was kept good, or that plaintiffs are willing to keep it good. The written contract and the uncontradicted evidence show that the contract was made between the three parties, and that Noack had the right to the deed under one condition, and that Bothe had an equal right to this deed under a condition. Bothe, as well as Noack, was a principal maker in the notes. They were joint notes, and the written contract provides that under certain conditions the deed should be made to Bothe. Bothe paid substantially the first payment of purchase money, and Noack had not paid a cent, and did not intend to pay the notes. The deed should stand, and the complaint should be dismissed.

2. Plaintiff demurred to the cross-complaint of defendant, and the cross-complaint sets up a good cause of action under our statute of 1917. The old provision relative to setoff and counterclaim was amended by act 207, Acts 1917, p. 1441. This is a very broad provision and speaks for itself. The whole object and purpose of this provision was to give an opportunity to settle all matters in dispute between the parties no matter how they arose. 134 Ark. 311 (314). The contract and facts here are entirely different from those in 135 Ark. 531. The decree of the lower court is not sustained by the law or evidence and should be reversed.

*Chapline & Morrison,* for appellee.

The cross-complaint does not ask for a money but

for specific performance of a contract. Since the passage of the act of 1917, the law is that a cause of action, either upon a contract or in tort, may be the subject of a counterclaim in any action to recover money. 134 Ark. 314; 135 *Id.* 535. The cross-complaint does not grow out of the contract and is inapplicable to this suit. The demurrer to the cross-complaint was properly sustained. 26 R. C. L. 643; 38 Cyc. 132. The decree is right, and should be affirmed.

HART, J. (after stating the facts). The correctness of the decree of the chancellor depends upon the construction to be given the contract for the purchase of the land signed by Noack and Scheuer on the 26th day of July, 1919.

On the one hand, it is claimed by Bothe that Noack committed a breach of the contract by failing to pay the note for $2,000 due on January 5, 1920, and that therefore he was not entitled to a specific performance of the contract.

Counsel for Bothe contend further that the contract was made for the benefit of Bothe, and that Bothe, having paid the $2,000 note when it fell due and knowing further that Noack could not himself pay the remaining notes, had a right to pay them off before they became due and to take a deed to himself to the land.

On the other hand, counsel for Noack claim that Noack had the right to pay the purchase money at any time before the last note fell due and demand the execution of a deed to himself to the land. He claims that Bothe had no rights under the contract until all the purchase money notes fell due and Noack failed to pay them.

Although Bothe did not sign the contract, it was made for his benefit, and he was entitled to the performance of it according to its terms the same as if he had signed it. The contract between Scheuer and Noack provided that the notes for the purchase money of the land should also be signed by H. Bothe. Bothe signed these notes, and thereby became bound to pay them and accepted the terms of the contract. Thereafter he became interested

in the contract and was entitled to have it performed according to its terms.

We are of the opinion, however, that the contract does not mean that, upon the failure of Noack to pay the first note when it became due, he had committed such a breach of the contract as would prevent him from having specific performance thereof. There is nothing in the contract providing that, upon the nonpayment of one note, all should become due. Neither does the language used indicate that the parties regarded time as the essence of the contract. The contract provides that Noack should assume the payment of a mortgage on the property for the sum of $3,500. Noack is designated in the contract as the second party, and Chas. Scheuer and Martha Scheuer are called the first parties. That part of the contract upon which Bothe relies is as follows:

"Second party shall execute to the first parties his promissory note for that part of the purchase price which is to be paid directly to first parties, and the said notes are to be signed by H. Bothe. In the event second party should be unable to complete the payment of the purchase price, then Mr. Bothe is hereby given the right to pay the aforesaid notes, and, in the event he does so pay said notes, he shall be substituted to all the rights of second party under this contract, and he shall be entitled to have from first parties the said warranty deed."

It will be noted that the language used is that, if Noack should be unable to complete the payment of the purchase price, then Bothe is given a right to pay the purchase money notes and be substituted to the rights of Noack. The contract does not give the right of substitution to Bothe upon the payment of the first note merely. It is true that the last two notes are payable on or before a certain date, but that fact, merely, could not give Bothe the right to be substituted in the place of Noack. It only gave him the right to pay off the notes. Noack had the right to have the specific performance of the contract if he paid the purchase money notes off before they all finally became due. It did not make any dif-

ference that he did not have the money himself. He had the right to borrow the money with which to pay the purchase price. This he did, and made a tender of the amount due to Bothe before the last two notes fell due.

We hold that under the terms of the contract Bothe had the right to pay the last two notes on the 14th day of January, 1920, because they were made payable on or before a certain date, but the fact that he paid them before they became due did not give him the right to be substituted for Noack, for the reason that Noack had until all the notes became due before he lost his right to have specific performance of the contract. He made a tender of the amount due which had been paid by Bothe and Bothe declined the tender. Therefore, it was not necessary that Noack should deposit the money in the registry of the court. He stood ready to pay the amount at any time, and the court protected the rights of Bothe by giving him a lien on the land for the purchase money paid by him. *Strickland* v. *Clements,* 83 Ark. 484.

By way of cross-complaint, Bothe asked for judgment against Noack in the sum of $639.44 which Noack owed him on account. Noack was a tenant of Bothe on another tract of land and owed Bothe this amount for supplies furnished him. This was not the proper subject of counterclaim. The suit of Noack was for the specific performance of a contract with Scheuer to convey him a tract of land. We have held that a counterclaim is allowed under our statutes only in actions for the recovery of money, and that the counterclaim must tend in some way to diminish or defeat the plaintiff's recovery.

The suit of Noack for specific performance could in no wise be affected by the recovery of a judgment by Bothe against him for supplies. The two transactions could have no relation whatever to each other and the court properly denied Bothe the right to recover on his counterclaim. *Smith* v. *Glover,* 135 Ark. 531.

It follows that the decree will be affirmed.